

# NUMBER 13-19-00616-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICKY RIVERA,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

## On appeal from the 377th District Court
## of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Justice Longoria**

Appellant Ricky Rivera pleaded guilty to online solicitation of a minor, a third-degree felony. *See* TEX. PENAL CODE ANN. § 33.021(b). Rivera was placed on community supervision, which the trial court subsequently revoked. On appeal, Rivera argues that he received ineffective assistance of counsel. We affirm.

## I.    BACKGROUND

On January 23, 2019, in accordance with a plea bargain agreement with the State, Rivera pleaded guilty to online solicitation of a minor. *See id*. Rivera admitted that he was arrested in 2016 when he arrived at a park with a condom in his pocket expecting to meet and engage in sexual activity with a minor girl. He had communicated with, and set up a meeting time and place with, the person he believed to be a sixteen-year-old minor— Detective Wilmer McLeroy—through Facebook. At the time, Rivera was approximately twenty-nine years old. The trial court sentenced Rivera to ten years' confinement in the Texas Department of Criminal Justice—Institutional Division. However, the trial court suspended the sentence and placed Rivera on eight years of deferred-adjudication community supervision.

Eight months later, the State filed a motion to revoke Rivera's community supervision. The State alleged that Rivera violated multiple terms of his supervision by: (1) consuming alcohol on more than one occasion; (2) changing his place of residence, and living with a minor for at least one month, without prior approval from his probation officer; (3) failing to pay various court costs, fees, and fines; (4) failing to complete community service hours; (5) failing to complete additional sex-offender treatment after being unsuccessfully discharged from his previous treatment program; (6) failing to refrain from contact with any person under eighteen years of age unless under the supervision of an approved responsible adult; (7) using a device to access the internet; and (8) accessing and maintaining his Facebook account.

Cassandra Trevino, Rivera's community supervision officer, testified that she verified Rivera's old address when he moved to Cameron County. When Rivera first

moved to Cameron County, he lived with his family. However, his family moved from that residence, and Rivera requested permission to move to his family's new residence. According to Trevino, she informed Rivera that she would need to speak with the landlord of the new residence to ensure that he could live there, given his sex-offender status. While attempting to verify the new address, Trevino discovered that Rivera had attempted to impersonate the landlord by making phone calls to Trevino. Trevino asserted that Rivera additionally created a fake email address and sent her an email in his attempt to impersonate the landlord. Trevino testified that she was never able to verify that the new landlord approved of him living with his family.

Trevino further averred that she was contacted by a Child Protective Services (CPS) caseworker and informed that Rivera's girlfriend had a baby, and that Rivera was living with them, not his family. Trevino admitted that she did not personally verify whether Rivera was living with his girlfriend. But Trevino testified that Rivera admitted to accessing and maintaining his Facebook account in January and February of 2019, despite his community supervision terms forbidding the access or use of social media.

Mindy Pawlik, another probation officer, testified that she spoke with Rivera while he was in jail following his arrest and transfer to Victoria County. According to Pawlik, Rivera admitted to living with his girlfriend and the minor child for approximately one month. Additionally, Pawlik asserted that Rivera admitted to her that he had consumed alcohol on multiple occasions, in violation of his community supervision terms.

Rivera testified in his own defense and admitted to accessing the internet to create a fake e-mail address and attempting to impersonate the landlord. However, Rivera denied the State's other allegations. The trial court found the allegations in the motion to

3

revoke concerning the various fees, costs, and fines to be not true; however, the trial court found the rest of the allegations to be true. The trial court revoked Rivera's community supervision and sentenced him to ten years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. This appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole issue, Rivera argues that he received ineffective assistance of counsel. More specifically, he argues his counsel was ineffective for failing to object to the allegedly inadmissible hearsay statements made by the CPS caseworker to Trevino concerning Rivera's place of residence.

## A. Standard of Review and Applicable Law

For a claim of ineffective assistance of counsel to be sustained, an appellant must satisfy the two-prong test set forth under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, an appellant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness and prevailing professional norms. *Id.*; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.— Houston [14th Dist.] 2013, no pet.). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any claim for ineffectiveness of counsel must be firmly founded in the record. *See Thompson*, 9 S.W.3d at 814. If the record is silent on the motivation behind counsel's tactical decisions, then an appellant usually cannot overcome the strong presumption that counsel's representation was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App.

4

1994). Because "the record is generally underdeveloped," direct appeal is usually an inadequate vehicle for claims of ineffective assistance of counsel. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Additionally, courts are hesitant to declare a counsel's performance as deficient until counsel has been afforded an opportunity to explain her reasoning behind her performance. *See id*. For that reason, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Under the second prong, an appellant must show that counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 687.

**B.    Analysis**

Rivera argues that, based on Trevino's testimony, it is unclear which CPS caseworker claimed that Rivera lived with his girlfriend and a minor child. By a single sentence, Rivera argues that "[t]he failure of defense counsel to object tipped the scales and caused the court to find the allegation involving living at his girlfriend's residence true, prejudicing appellant." However, Rivera's issue fails because he has not demonstrated that there is a reasonable probability that the result would have been different even if his counsel had objected. *See id.*

The testimony about the tip from the CPS caseworker was not the only evidence concerning Rivera's residence. Pawlik testified that Rivera admitted to living with his girlfriend and the minor child, which would be in violation of his community supervision.

Additionally, a single proven violation is all that is needed to affirm a trial court's order revoking a defendant's community supervision. *See Smith v. State,* 286 S.W.3d 333, 342 (Tex. Crim. App. 2009). Here, Rivera himself admitted to accessing the internet, in violation of his community supervision, to create a fake e-mail account in an attempt to impersonate his landlord. Also, the trial court ultimately found all the other allegations of his violations of the community supervision terms, including his consumption of alcohol, his failure to complete community service hours, his dismissal from the sex offender treatment program, and his maintenance of a social media account, to be true. Rivera does not contest these grounds on appeal. Therefore, even disregarding the testimony which Rivera claims his trial counsel should have objected to, the trial court had ample grounds to revoke his community supervision. *See id.* Accordingly, we conclude that Rivera has not established that he was prejudiced due to his counsel's failure to object to the CPS caseworker's testimony. *See Strickland,* 466 U.S. at 687. We overrule Rivera's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
22nd day of April, 2021.

6